IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| The Ohio Willow Wood Company, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 2:05-cv-1039 |
| ALPS South, LLC, | : | JUDGE SARGUS |
| Defendant. | : | |

<u>ORDER</u>

This matter is before the Court to consider three motions for leave to amend filed by defendant Alps South, LLC. (#98, #133, and #134). Also before the Court are Alps' motions for a protective order, or in the alternative motions to stay (#137 and #159). These motions have been fully briefed. For the following reasons, the motions for leave to amend will be granted and the remaining motions will be denied.

I. <u>Background</u>

The background of this patent infringement case between two manufacturers of prosthetic device liners has been set forth in previous orders of this Court and will not be set forth in great detail here. Briefly, however, The Ohio Willow Wood Company (OWW) filed this action in November 2005 against Alps South Corporation (Alps) claiming that Alps is infringing OWW's exclusive rights under U.S Patent No. 6,964,688 (the '688 Patent). Alps has denied any infringement and contends that the '688 Patent is invalid and unenforceable. Beginning in late 2006, at Alps' request, the '688 Patent has been re-examined four times. After each of the first three reexaminations, the Patent and Trademark Office issued an office action modifying the '688

Patent. On July 19, 2009, the PTO issued an office action on the fourth reexamination rejecting 68 of the 71 claims of the '688 Patent. During much of the reexamination period (from February 9, 2007, until February 6, 2009), this case was formally stayed.

During the pendency of the stay, OWW filed a motion for a preliminary injunction. Following an extensive hearing, on September 8, 2009, the Court issued an opinion and order denying OWW's motion and denying as moot Alps' motion for a stay.

## II. Motions to Amend

In its first motion for leave to amend, Alps seeks to amend its answer to deny six allegations previously admitted. Through its other motions, Alps seeks to amend its counterclaim to add additional claims under Sections 1 and 2 of the Sherman Act and a claim under §43(a) of the Lanham Act. Alps seeks also to add Bruce Kania as a party to its antitrust claim under Section 1 of the Sherman Act.

### A. Motion to Amend Answer (#98)

Through this motion, Alps seeks to amend paragraphs 19, 20, 39, 40, 57, and 58 of its answer. It asserts that OWW has construed these paragraphs as Alps' admission that certain of its products infringe the "docking means" claims of the '688 Patent. As explained by Alps, OWW's allegations to which these paragraphs of the answer responded did not reference the '688 Patent and were very general with respect to the concept of a "docking means" or method of attachment between certain Alps products and an external device. Essentially, Alps seeks to clarify these six paragraphs in its answer in response to what it contends is OWW's misinterpretation of them. Alps asserts that OWW will not be prejudiced by such an amendment because OWW has been aware of Alps' position on the docking means issue since as early as November 2008. Further, Alps argues that the docking means issue will be central to this case even if leave to amend the answer is

not granted.

In response, OWW contends that Alps' current position is inconsistent with the disclosure of the '688 Patent. Further, OWW asserts that it will be prejudiced by the amendment because it will incur additional costs in the claim construction process and during discovery, and because of the additional delay which will result if the amendment is permitted. Finally, OWW argues that Alps waited "an unreasonably long time" before seeking leave to amend.

Fed.R.Civ.P. 15(a)(2) states that when a party is required to seek leave of court in order to file an amended pleading, "[t]he court should freely give leave when justice so requires." The United States Court of Appeals for the Sixth Circuit has spoken extensively on this standard, relying upon the decisions of the United States Supreme Court in Foman v. Davis, 371 U.S. 178 (1962) and Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971), decisions which give substantial meaning to the "when justice so requires." In Foman, the Court indicated that the rule is to be interpreted liberally, and that in the absence of undue delay, bad faith, or dilatory motive on the part of the party proposing an amendment, leave should be granted. In Zenith Radio Corp., the Court indicated that mere delay, of itself, is not a reason to deny leave to amend, but delay coupled with demonstrable prejudice either to the interests of the opposing party or of the Court can justify such denial.

Expanding upon these decisions, the Court of Appeals has noted that:

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in

3

another jurisdiction.

Phelps v. McClellan, 30 F.3d 658, 662-63 (6th Cir. 1994) (citing Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau, 786 F.2d 101, 103 (2d Cir. 1986)). See also Moore v. City of Paducah, 790 F.2d 557 (6th Cir. 1986); Tefft v. Seward, 689 F.2d 637 (6th Cir. 1982). Stated differently, deciding if any prejudice to the opposing party is "undue" requires the Court to focus on, among other things, whether an amendment at any stage of the litigation would make the case unduly complex and confusing, see Duchon v. Cajon Co., 791 F.2d 43 (6th Cir. 1986) (per curiam), and to ask if the defending party would have conducted the defense in a substantially different manner had the amendment been tendered previously. General Electric Co. v. Sargent and Lundy, 916 F.2d 1119, 1130 (6th Cir. 1990); see also Davis v. Therm-O-Disc, Inc., 791 F. Supp. 693 (N.D. Ohio 1992).

Here, OWW will not be significantly prejudiced if Alps is permitted to amend its answer. That is, given the current posture of this case, the Court is not persuaded that OWW will incur significant costs associated with discovery or delay as a result of the proposed amendments to these six paragraphs of the answer. Further, Alps moved for leave to amend within a reasonable time after the stay of this case was lifted. Consequently, Alps' motion for leave to amend its answer will be granted.

  B. Motions to Amend Counterclaim (#133 and #134)

Alps seeks to amend its counterclaim to add claims under Sections 1 and 2 of the Sherman Act and a claim under §43(a) of the Lanham Act. Alps also seeks to amend its counterclaim to add Bruce Kania as a party to its antitrust claim under Section 1 of the Sherman Act. According to Alps, since this case was filed, it has learned through the reexaminations of the '688 Patent,

through discovery undertaken by it and others in patent cases involving the same subject matter, and in connection with the preliminary injunction proceedings before this Court, that OWW has acted unreasonably to restrain trade and has monopolized or attempted to monopolize the market for fabric-covered polymeric gel liners in the United States. Alps contends that it has learned that the '688 Patent was fraudulently procured from the USPTO through the efforts of OWW and Mr. Kania. Specifically, Alps asserts that co-inventors were eliminated from the application, prior art from two competitors was withheld or mischaracterized, and unfavorable testimony from OWW's own expert was withheld. Alps contends also that OWW has used federal litigation to enforce a fraudulently obtained patent.

OWW raises several arguments in response, one of which raises the preliminary matter of whether Alps can demonstrate good cause under Rule 16(b) for seeking to amend after the deadline of July 7, 2006. According to OWW, Alps has not been diligent in bringing these claims because most of the evidence relied upon by Alps was in existence or subject to discovery prior to the amendment deadline. Additionally, OWW contends that it will be substantially prejudiced by any amendment because of additional delay and discovery, and the necessity of filing an additional dispositive motion. With respect to the proposed amendment to add Mr. Kania, OWW makes the additional argument that any motion to add him is premature because the amendments involving the antitrust claims have not been approved.

Because a finding that Alps has not demonstrated good cause under Rule 16(b) would be dispositive of the motions without any need for the Court to consider the proposed amendments under Rule 15(a), the Court will turn to that issue first. When, as here, the deadline established by the Court's scheduling order has passed, the Sixth Circuit has made clear that, "a plaintiff must

5

first show good cause under Rule 16(b) for failure earlier to seek leave to amend" and the Court "must evaluate prejudice to the nonmoving party 'before a court will [even] consider whether amendment is proper under Rule 15(a).'" Commerce Benefits Group, Inc v. McKesson Corp., 326 Fed. Appx. 369 (6th Cir. 2009)(quoting Leary v. Daeschner, 349 F.3d 888 (6th Cir. 2003)); see also Hill v. Banks, 85 Fed. Appx. 432, 433 (6th Cir. 2003). Consequently, the Court is permitted to examine the standard factors governing amendments of the counterclaims under Rule 15(a) only if it is satisfied that the date for the filing of a motion for leave to amend is properly extended under the good cause provisions of Rule 16(b).

Alps contends that it has demonstrated good cause for a number of reasons. First, Alps asserts that, in light of the progress of this case, the previous amendment deadline is no longer applicable. Further, Alps maintains that it could not have brought its motions sooner because much of the evidence in support was obtained from the recent reexaminations and in connection with the preliminary injunction proceedings. Alps explains that OWW's position to the contrary relies on "piecemeal" sections of evidence and fails to recognize that it is the evidence, taken as a whole, which demonstrates OWW's pattern of intentionally deceiving the USPTO and using the fraudulently obtained patents to engage in anti-competitive behavior. Alps contends that it was not in a position to bring its proposed claims earlier because it must satisfy a higher evidentiary burden given that these claims allege fraudulent and bad faith conduct. Further, Alps asserts that OWW will not suffer any prejudice because, as a result of the reexaminations, this case is basically starting again from scratch. According to Alps, if this case proceeds, discovery, claim construction, and a *Markman* hearing will need to be undertaken. Alps notes that the

Court requested the parties to submit proposed new scheduling orders following the preliminary injunction hearing.  Finally, Alps argues that it may be significantly prejudiced by the denial of its motion if its proposed claims could be deemed compulsory.

The Court finds that Alps has demonstrated good cause for its failure to seek leave to amend prior to now.  Given the progress of this case to date and the nature of the claims proposed by Alps, the Court does not believe that Alps' lack of diligence is the reason it has not sought leave to amend until now.  Moreover, and equally as significant, OWW has not pointed to any substantial prejudice it will suffer that might dissuade the Court from simply proceeding with an analysis of Alps' motions under Rule 15(a).  While OWW argues that additional discovery may need to be undertaken or an additional dispositive motion may need to be filed, these are not allegations of prejudice so severe as to prohibit a finding of good cause.

In its arguments addressing Rule 15(a)(2)'s liberal standard regarding amendments, OWW identifies delay and prejudice as two of the reasons why the motions for leave to amend should be denied.  As discussed above, Alps has not acted to delay this matter and OWW has not identified any prejudice OWW will suffer if leave to amend is granted. However, OWW also contends that Alps' proposed amendments are futile, which could be an independent basis for denying leave to amend.  See Robinson v. Michigan Consol. Gas Co., 918 F.2d 579 (6th Cir. 1990).

According to OWW, Alps' Lanham Act claim is futile because Alps cannot provide clear and convincing evidence that OWW did not have a reasonable basis to believe that Alps infringed the '688 Patent or that OWW knew it was enforcing an invalid and unenforceable patent.  Similarly, OWW contends that, because it believes its patents to be valid, Alps cannot show that OWW filed lawsuits to enforce invalid patents or entered into licensing

agreements based on fraudulently obtained patents in violation of Section 1 of the Sherman Act.  Additionally, OWW argues that Alps cannot show, and does not properly allege, that OWW has violated Section 2 of the Sherman Act.  According to OWW, Alps cannot succeed on its claim that OWW procured its patent by fraud on the patent office, or its "Walker Process" claim, because Alps will be unable to show that OWW committed fraud and that it has not even alleged that OWW filed suit with knowledge of any fraud.  Moreover, OWW argues, even if Alps could establish that OWW should be stripped of antitrust immunity, Alps will be unable to establish an underlying antitrust violation.  Lastly, with respect to Mr. Kania, OWW argues that, to the extent Alps seeks to allege an antitrust claim against him under Section 1 of the Sherman Act, Alps has failed to allege that he had an agreement with OWW to restrain trade or that he and OWW acted concertedly to restrain trade.

There is some conceptual difficulty presented by OWW's futility argument.  A Magistrate Judge cannot ordinarily rule on a motion to dismiss, <u>see</u> 28 U.S.C. §636(b)(1)(A), and denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits of that claim.  At least where the claim is arguably sufficient, it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge by way of a motion to dismiss.  Consequently, rather than determining the actual legal sufficiency of the new claim, in many cases it will suffice to determine if there is a substantial argument to be made on that question and, if so, to allow the amended pleading to be filed.

To establish a Lanham Act claim, Alps must allege that (1) OWW made a false or misleading statement of fact in commercial

8

advertising or promotion about Alps' goods or services: (2) the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that OWW caused the statement to enter interstate commerce; and (5) that the statement resulted in actual or probable injury to Alps.

With respect to Alps' proposed antitrust claims, Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. §1. Section 2 of the Sherman Act makes it unlawful to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States..." 15 U.S.C. §2.

In response to OWW's futility argument, Alps details, at some length, how the allegations of its counterclaim sufficiently allege Lanham Act and antitrust claims consistent with the elements noted above. In light of this, the Court finds that Alps has made a substantial argument regarding its claims. Further, it is worth noting that much of OWW's argument does not concern the sufficiency of the way these claims are pleaded, but the separate question of whether there is or will be enough evidence to prove them. That is not a question that the Court either can or should address when deciding whether to allow a party to amend a pleading. Under these circumstances, the Court finds it a better exercise of discretion to allow the proposed amendments. OWW will be free to reassert its arguments about the sufficiency of the amended counterclaims once they are filed. Consequently, the motions to amend the counterclaim will be granted.

III. <u>Motions for a Protective Order (#137 and #159)</u>

In its motions for a protective order, Alps seeks to have subpoenas which OWW served on non-party Silipos, Inc. quashed and to prohibit OWW from pursuing any other discovery or taking any other action in this case until the reexamination on the '688 Patent is concluded. Alternatively, Alps requests the Court to reinstate the stay until the reexamination concludes.

Briefly, by way of background, OWW served Silipos, Inc. with subpoenas issued from the United States District Court for the Western District of New York. In response, Alps filed its original motion for a protective order (#137). Silipos also filed a motion to quash. OWW and Silipos recently entered into a stipulation relating to the subpoenas under which a new subpoena will be issued out of the Western District of New York. As a result, Silipos withdrew its motion to quash. Alps' second motion for a protective order (#159) is directed to the subpoenas covered by the stipulation. Because OWW responded to Alps' initial motion for a protective order, the Court will consider the arguments set forth in that response in connection with Alps' second motion.

This Court has substantial discretion to issue protective orders pursuant to Rule 26(c) to protect parties and witnesses from annoyance, embarrassment, oppression, or undue burden or expense. Alps contends that such a protective order is necessary because, given the current posture of this case, requiring Alps to participate in discovery is oppressive and results in undue burden and expense. Alps also challenges the validity of the subpoenas and asserts that they seek duplicative and irrelevant information.

The Court does not find Alps' arguments persuasive. The Court does not believe that the Silipos subpoenas place such burden and expense on Alps as to warrant a protective order. The

10

Court also is unwilling, based on the current record, to consider the burden of any future discovery when that eventuality has not occurred.

As for Alps' alternative request for a complete stay of this case, the issue of whether to stay an action for alleged patent infringement pending a reexamination is committed to the sound discretion of the district court. Ethicon, Inc. v. Ouigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988). In considering such a request, courts generally consider three factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay would simplify the issues in question and the trial of the case; and (3) whether discovery is complete and whether a trial date has been set. Xerox Corp v. 3Com Corp., 69 F.Supp.2d 404, 406-07 (W.D.N.Y. 1999).

The Court has already granted one request for a lengthy stay. Although granting that stay served the considerations set forth above, the Court does not believe that a reinstatement of the stay at this time would provide much in the way of further benefit to the parties or the Court. This case has been pending for more than four years and many of the various reexaminations to date have already helped to redefine the issues. The Court is, in this order, allowing new claims to be asserted for, among other reasons, the purpose of gathering all of the claims between the parties together so that their disputes, whatever their nature or scope, may finally move toward resolution. Any incremental benefit that might be gained from a stay is far outweighed by the need to move this case forward in as expeditious a fashion as possible. As the case progresses, should the reexamination again impact the issues, the parties can request relief based upon that reexamination.

## IV. Disposition

Based on the foregoing, the motions for leave to amend (#98,

#133, and # 134) are granted.  The motions to quash and the motion for a protective order, or, alternatively, for a stay (#137 and #159) are denied.  The Clerk shall detach and file the amended answer and counterclaim attached to Doc. 133.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge