IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE OHIO WILLOW WOOD COMPANY,**

      **Plaintiff,**

  **v.**

**ALPS SOUTH, LLC,**

      **Defendant.**

Case No. 2:05-cv-1039

JUDGE EDMUND A. SARGUS, JR.

MAGISTRATE JUDGE TERENCE P. KEMP

## OPINION AND ORDER

In an Order dated February 8, 2010 (the "Order"), Magistrate Judge Kemp granted three motions for leave to amend and denied two motions requesting a protective order or reinstatement of the stay, all filed by Defendant Alps South, LLC ("Alps"). (Doc. 161.) Plaintiff The Ohio Willow Wood Company ("OWW") has filed objections to those parts of the Order granting two of the motions for leave to amend. In those two motions, Alps had sought leave to amend its answer to add additional claims under Sections 1 and 2 of the Sherman Act and a claim under § 43(a) of the Lanham Act (Doc. 133) and to add Bruce Kania as a defendant to the antitrust counterclaim (Doc. 134). For the reasons that follow, the Court hereby **ADOPTS** and **AFFIRMS** the Magistrate Judge's Order.

I.

When a party files an objection to a Magistrate Judge's order on a pretrial matter, this Court must modify or set aside any part of the order that is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948); *Hagaman v. Comm'r*, 958 F.2d 684, 690 (6th Cir. 1992);

*Duggan v. Vill. of New Albany*, No. 2:08-cv-814, 2009 U.S. Dist. Lexis 117206, *3–4 (S.D. Ohio Dec. 15, 2009). "To establish that a magistrate judge's opinion is contrary to law, an aggrieved party must demonstrate that the conclusions ignore or contradict relevant precepts of law." *Duggan*, 2009 U.S. Dist. Lexis 117206 at *4 (citing *Gandee v. Glaser*, 785 F.Supp. 684, 686 (S.D. Ohio 1992)).

## II.

OWW asserts that the Magistrate Judge erred in (A) finding that Alps demonstrated good cause for its delay in filing its motions to amend and (B) declining to evaluate the legal sufficiency of Alps' proposed counterclaims.

### A. <u>Good Cause for Delay</u>

OWW first objects to the Magistrate Judge's conclusion that Alps demonstrated good cause for its delay in filing its motions to amend. The Sixth Circuit has held:

> Although, as required by Rule 15(a)(2) of the Federal Rules of Civil Procedure, generally a district court must "freely give leave to amend," . . . a different standard applies when a proposed amendment is so late that it would require the modification of a Rule 16 scheduling order. In such a case, the movant must demonstrate "good cause" for his failure to move to amend at a time that would not have required modification of the scheduling order. In determining whether the "good cause" standard is met, the district court must consider whether the amendment will prejudice the party opposing it.

*Korn v. Paul Revere Life Ins. Co.*, No. 09-1081, 2010 U.S. App. Lexis 13084, *14 (6th Cir. 2010) (citing *Leary v. Daeschner*, 349 F.3d 888, 905–09 (2003)).

Noting "the progress of this case to date and the nature of the claims proposed by Alps," the Magistrate Judge concluded that "Alps has not acted to delay this matter," and "Alps' lack of diligence is [not] the reason it has not sought leave to amend until now." (Order 7.) "Moreover, and equally as significant," the Magistrate Judge found that "OWW has not pointed to any substantial prejudice it will suffer," finding that the possibility of "additional discovery . . . or an

2

additional dispositive motion . . . are not allegations of prejudice so severe as to prohibit a finding of good cause." (*Id.*)

OWW focuses on the length of Alps' delay in filing its motion to amend. (Pl.'s Mem. 3.) The deadline for the filing of amended pleadings passed in July of 2006, and Alps filed the relevant motions to amend in November of 2009. (Docs. 17, 133, 134.) While Alps obviously missed the deadline, the Court notes that this case was stayed for two years, from February of 2007 to February of 2009, during the period of that delay. (Docs. 29, 51.) As for the delay of over one year during which the case was not stayed, Alps asserts that it did not yet have the evidence necessary to support the proposed counterclaims. Alps asserts that it gathered the necessary information from OWW's conduct during the 2007 reexamination proceeding before the U.S. Patent and Trademark Office ("PTO"), during the preliminary injunction proceedings and related discovery after the stay was lifted, and from other litigation between the parties involving related patents. (Def.'s Mem. 2–3.) Alps contends that "this later evidence, when taken together with what was known beforehand, shows that OWW is engaged in a pattern of willfully, intentionally, and knowingly misleading the patent office." (*Id.* at 5.)

OWW responds by suggesting that Alps had sufficient evidence to assert its proposed counterclaims before the 2006 deadline. Alps admits that it pleaded inequitable conduct as an affirmative defense because it was aware, at an early stage, of evidence allegedly suggesting that OWW had misled the PTO. Alps states, however, that it did not yet have "clear and convincing evidence that OWW *intentionally and knowingly* misled the USPTO" to support its proposed counterclaims. (Def.'s Mem. 5 (emphasis added).) For example, Alps points to later-acquired evidence that allegedly shows that OWW *knew* about relevant prior art that it did not disclose to the PTO. (*Id.* at 6.) While OWW contends that Alps relies on a "minutia" of later-acquired

3

evidence, it is not clear that Alps could have presented its proposed counterclaims based solely on the earlier-acquired evidence. This Court therefore agrees that "Alps' lack of diligence is [not] the reason it has not sought leave to amend until now." (Order 7.)

The Court also agrees with the Magistrate Judge's conclusion that "OWW has not pointed to any substantial prejudice it will suffer." (Order 7.) Alps' proposed counterclaims will likely result in additional discovery and possibly an additional dispositive motion. However, due to the circumstances of the PTO's reexamination proceedings, for all practical purposes, this case is not at such a late stage that additional discovery and motions at this time would substantially prejudice OWW.

Given the above considerations, this Court can neither reach a "definite and firm conviction that a mistake has been committed," *United States Gypsum Co.*, 333 U.S. at 395, nor find that the Magistrate Judge's conclusions "ignore or contradict relevant precepts of law." *Duggan*, 2009 U.S. Dist. Lexis 117206 at *4, as to the Magistrate Judge's finding that Alps demonstrated good cause for its delay in filing its motions to amend.

**B.  Legal Sufficiency of Counterclaims**

In its memoranda before the Magistrate Judge, OWW asserted that Alps' proposed amendments would be futile and therefore should not be allowed. (*See* Doc. 139 at 11.) "A proposed amendment is futile," and should not be allowed, "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)); *Riverview Health Inst. LLC v. Medical Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. Ohio 2010). However, a proposed additional claim "is

not necessarily futile even if the claim may ultimately be dismissed on a motion for summary judgment." *Id.*, 203 F.3d at 422.

Noting that a Magistrate Judge cannot ordinarily rule on a motion to dismiss, the Magistrate Judge declined to determine the legal sufficiency of the counterclaims under the standard set forth in Rule 12(b)(6). Instead, he determined that Alps asserted a "substantial argument" regarding the counterclaims' legal sufficiency. (Order 8.) OWW asserts that the Magistrate Judge should have determined the legal sufficiency of the counterclaims, an analysis this Court will now undertake. Because OWW addresses only the proposed counterclaims against OWW and Bruce Kania under Section 1 of the Sherman Act, 15 U.S.C. § 1, however, the Court limits its review to those claims.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To establish a claim under § 1, a plaintiff must prove that (1) the defendants entered into a contract, combination, or conspiracy; and (2) "such contract, combination or conspiracy amounted to an unreasonable restraint of trade or commerce among the several States." *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010) (quoting *Cont'l Cablevision of Ohio, Inc. v. Am. Elec. Power Co.*, 715 F.2d 1115, 1118 (6th Cir. 1983)).

In its Amended Answer, Alps alleges that OWW and Kania purposely misled the PTO during the patent application process and during reexamination proceedings. (Am. Answer ¶¶ 23–62.) Alps further alleges generally that OWW and Kania have used federal litigation to enforce the fraudulently obtained patents in an effort to exclude market competition, although Alps' specific allegations are that only OWW, not Kania, has engaged in such enforcement. (*Id.* at ¶¶ 63–69.)

5

As OWW correctly states, Alps' Section 1 claim "is based on its allegation that OWW and Mr. Kania combined to fraudulently *obtain and enforce* [the] '688 patent in unreasonable restraint of trade." (Pl.'s Mem. 6–7 (emphasis added).) In other words, OWW asserts that, in order to establish a contract, combination, or conspiracy, Alps "attempts to combine the acts of patent prosecution with that of patent enforcement." (*Id.* at 7.) OWW contends that acts of prosecution and enforcement cannot be combined because "it is a long accepted proposition that the fraudulent prosecution of a patent *in and of itself* is not a violation of the anti-trust laws." (*Id.* at 8 (emphasis added) (citing *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1367 (Fed. Cir. 1984) (holding that the fraudulent procurement of a patent is not a *per se* violation of Section 2 of the Sherman Act); *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45–46 (2006) (noting that "a patent does not necessarily confer market power upon the patentee")).) OWW asserts that only patent *enforcement*, not patent prosecution, can restrain trade.[1] OWW contends that, even if OWW and Kania participated in a fraud on the PTO, there can be no contract, combination, or conspiracy because only OWW took action to enforce the patent, and this action was not in combination with Kania or any other party.

Even if the fraudulent prosecution of a patent, by itself, does not violate the Sherman Act, this Court finds no reason to conclude that a multi-party scheme to fraudulently *obtain and enforce* a patent cannot constitute a "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" in violation of Section 1 of the Sherman Act. The Supreme Court has held that "[i]t is not the form of the combination or the particular means used but the result to be achieved that the [Sherman Act] condemns. . . . [I]f [the acts] are part of the sum of the acts which are relied upon to effectuate the conspiracy which the statute forbids, they

---

[1] The Supreme Court has held that "the enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174 (1965).

6

come within its prohibition." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946). *See also United States v. Singer Mfg. Co.*, 374 U.S. 174, 200 (1963) (White, J., concurring) ("[C]learly collusion among applicants to prevent prior art from coming to or being drawn to the Office's attention is an inequitable imposition on the Office and on the public. In my view, such collusion to secure a monopoly grant runs afoul of the Sherman Act's prohibitions against conspiracies in restraint of trade.") (internal citations omitted); *Cataphote Corp. v. De Soto Chemical Coatings, Inc.*, 450 F.2d 769, 772 (9th Cir. 1971) (noting that the Supreme Court's decision in *Walker Process* "would undoubtedly allow recovery under § 1 of the Sherman Act, if the requisite elements were proven.") (citing *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 428 F.2d 555, 567 n. 28 (5th Cir. 1970)).

Because OWW cites no controlling authority stating that a plaintiff cannot combine acts of patent prosecution and enforcement to show a violation of Section 1 of the Sherman Act, and this Court has located no such authority, the Court agrees with the Magistrate Judge's conclusion that Alps' claims are not futile.[2]

### III.

For the reasons set forth above, the Court **ADOPTS** and **AFFIRMS** the Magistrate Judge's Order (Doc. 161) and **DENIES** OWW's objections (Doc. 163).

**IT IS SO ORDERED.**

8-16-2010
DATED

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

---

[2] Because OWW bases its futility-related objections solely on the issue of whether Alps sufficiently alleges a contract, combination, or conspiracy in violation of Section 1 of the Sherman Act, the Court has limited its review to that issue. The Court therefore does not determine whether Alps' counterclaims would otherwise withstand a dispositive motion.

7