IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE OHIO WILLOW WOOD COMPANY,**

    **Plaintiff,**

v.

**ALPS SOUTH LLC,**

    **Defendant.**

**and**

**ALPS SOUTH LLC,**

    **Plaintiff,**

v.

**OHIO WILLOW WOOD COMPANY, et al.**

    **Defendants.**

**Case Nos. 2:05-cv-1039 and 2:09-cv-1027**

**JUDGE EDMUND A. SARGUS, JR.**

**MAGISTRATE JUDGE TERENCE P. KEMP**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant Ohio Willow Wood Company's Motion to Dismiss (Doc. 19). This motion has been fully briefed and is now ripe for disposition. For the reasons that follow, the motion is denied

### I. Background

Alps South LLC ("Alps") initiated this action against The Ohio Willow Wood Company ("OWW") and Bruce Kania ("Kania"), alleging antitrust violations pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, deceptive trade practices, pursuant to §43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and unfair competition, pursuant to state law. In its Amended Complaint, Alps alleges that OWW, acting both independently and in concert with Kania, has engaged in a scheme to unreasonably restrain trade and impede competition in the United States market for fabric-covered polymetric gel liners used in connection with prosthetic devices, and

that such scheme is in an effort to monopolize that market. At the core of the alleged scheme are the following patents for fabric-covered polymetric gel liners, which patent Alps alleges OWW procured, with Kania's help, by perpetrating fraud upon the United States Patent Office: U.S. Patent No. 6,964,688 ("the '688 patent'"); U.S. Patent No. 5,830,237 ("the '237 patent"); and U.S. Patent No. 7,291,182 ("the '182 patent'"). Among other allegations, Alps also claims that OWW has—through patent infringement litigation or the threat of such litigation—coerced two of its and Alps's competitors, Fillauer Companies, Inc. ("Fillauer") and Otto Bock HealthCare GmbH ("Otto Bock"), into patent license agreements that impose unreasonable royalties on the sales of products that use the patent. The license agreements, in Alps's view, constitute agreements by Fillauer and Otto Bock to limit their sales of competing fabric-covered polymetric gel liners in the United States. According to Alps, the allegedly unreasonable royalties impair Fillauer and Otto Bock from competing effectively in the relevant market, and that, as a consequence of OWW's coercive conduct to enforce allegedly invalid patents, competition within the relevant market has been stifled.

The patents that form the basis for this lawsuit are also the subject of two other cases before this Court. In *Ohio Willow Wood Company v. ALPS South LLC*, Case No. 2:05-cv-1039, which is pending before the undersigned judge, OWW has sued Alps for infringement of the '688 patent; in *Ohio Willow Wood Company v. ALPS, South Corporation*, Case No. 2:04-cv-1223, which is pending before Judge Gregory L. Frost, OWW has sued Alps for infringement of the '237 patent.[1] In both of those actions, Alps has asserted, among other defenses, the defense of patent invalidity and has asserted counterclaims seeking declarations that the patents at issue are invalid because they were procured by fraud. In Case No. 2:05-cv-1039, Alps sought and obtained leave of the Court to amend its counterclaims to add antitrust counterclaims under

---

[1] In Case No. 2:04-cv-1223, OWW also sued Alps for infringement of a fourth patent, U.S. Patent No. 6,406,499, which is not at issue in this action or in Case No. 2:05-cv-1039.

2

Sections 1 and 2 of the Sherman Act, and a deceptive trade practices claim under Section 43(a) of the Lanham Act, and to add Kania as a party to its antitrust claim under Section 1 of the Sherman Act.

As amended, Alps's counterclaims in Case No. 2:05-cv-1039 seek precisely the same relief on precisely the same claims and facts as Alps has brought in this action. Because the issues before the Court in Case No. 2:05-cv-1039 and in this action involve common questions of law and fact, the Court finds that the two cases should be consolidated, pursuant to Federal Rule of Civil Procedure 42(a)(2).[2]

Having thus consolidated Case Nos. 2:05-cv-1039 and 2:09-cv-1027, the Court considers OWW's and Kania's Motions to Dismiss in that context.

## II. Analysis

### A. Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require 'detailed factual allegations.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'"; "[n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, 129 S.

---

[2] Rule 42 provides, in relevant part: "If actions before the court involve a common question of law or fact, the court may . . . consolidate the actions . . . ." Fed. R. Civ. P. 42(a)(2).

3

Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Moreover, "[a]lthough for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### B.     OWW's Motion to Dismiss

As its first ground for dismissal of Alps's claims, OWW contends that the claims are compulsory counterclaims that should have been brought in OWW's patent infringement case in Case No. 2:05-cv-1039. This ground for dismissal is now moot in light of the amended counterclaims the Court gave Alps leave to assert in 2:05-cv-1039 and in light of the consolidation of 2:05-cv-1039 and 2:09-cv-1027.

As its second ground, OWW argues that Alps's claim under § 1 of the Sherman Act must be dismissed because Alps only alleges harm caused by patent enforcement, which, in OWW's view, the facts show was not and could not have been a concerted effort. The Court has previously considered and rejected this argument. In its August 16, 2010, Opinion and Order Adopting and Affirming the Magistrate Judge's Order, which granted Alps leave to amend its counterclaims,[3] the Court concluded that, even if the fraudulent prosecution of a patent by itself does not violate the Sherman Act, a scheme involving multiple parties using fraudulent means to obtain and enforce a patent could constitute such a violation. Specifically, the Court stated:

> Even if the fraudulent prosecution of a patent, by itself, does not violate the Sherman Act, this Court finds no reason to conclude that a multi-party scheme to fraudulently *obtain and enforce* a patent cannot constitute a "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce" in violation of Section 1 of the Sherman Act. The Supreme Court has held that "[i]t is not the form of the combination or the particular means used but the result to be achieved that the [Sherman Act] condemns . . . . [I]f [the acts] are part of the sum of the acts which are relied upon to effectuate the conspiracy

---

[3] The standard for granting leave to amend a complaint in the face of a challenge that such amendment would be futile is the same as the standard that applies to a motion to dismiss under Rule 12(b)(6). *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile," and should not be allowed, "if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.")

4

which the statute forbids, they come within its prohibition." *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946). *See also United States v. Singer Mfg. Co.*, 374 U.S. 174, 200 (1963) (White, J., concurring) ("[C]learly collusion among applicants to prevent prior art from coming to or being drawn to the Office's attention is an inequitable imposition on the Office and on the public. In my view, such collusion to secure a monopoly grant runs afoul of the Sherman Act's prohibitions against conspiracies in restraint of trade.") (internal citations omitted); *Cataphote Corp. v. De Soto Chemical Coatings, Inc.*, 450 F.2d 769, 772 (9th Cir. 1971) (noting that the Supreme Court's decision in *Walker Process* "would undoubtedly allow recovery under § 1 of the Sherman Act, if the requisite elements were proven.") (citing *Beckman Instruments, Inc. v. Chemtronics, Inc.*, 428 F.2d 555, 567 n. 28 (5th Cir. 1970)).

Opinion and Order, August 16, 2010, at 6-7, Case No. 2:05-cv-1039, Doc. 203. In rejecting OWW's argument that amending the complaint would be futile, the Court noted that OWW had cited no controlling authority in support of the proposition that a plaintiff cannot combine acts of patent prosecution and enforcement to show a violation of § 1 of the Sherman Act, and the Court had found no such authority. Thus, for the reasons set forth in the Court's August 16, 2010 Opinion and Order in Case No. 2:05-cv-1039, and in light of the consolidation of Case No. 2:05-cv-1039 with Case No. 2:09-cv-1027, OWW's first argument provides no grounds for dismissal.

Finally, OWW argues that Alps's claim under § 1 of the Sherman Act must be dismissed insofar as the claim rests upon allegations that OWW has unreasonably restrained trade by entering into licensing agreements with Fillauer and Otto Bock. The Court disagrees.

> Section 1 of the Sherman Act proscribes every contract, combination or conspiracy in restraint of trade or commerce. 15 U.S.C. § 1. To sustain a § 1 claim, plaintiffs must prove by a preponderance of the evidence two essential elements:
>
> > (1) That defendants entered into a contract, combination or conspiracy; and
> >
> > (2) That such contract, combination or conspiracy amounted to an unreasonable restraint of trade or commerce among the several States.
>
> *See Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942, 949 (6th Cir. 1983); *Davis-Watkins Co. v. Service Merchandise*, 686 F.2d 1190, 1195-96 (6th

5

Cir. 1982). In essence, plaintiffs must demonstrate that the alleged combination or conspiracy had either an unlawful purpose or an anticompetitive effect. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 436 n.13 (1978).

*Continental Cablevision of Ohio, Inc. v. American Electric Power Co.*, 715 F.2d 1115, 1118 (6th Cir. Ohio 1983). In this action, OWW contends that Alps has not alleged sufficient facts regarding the existence of a contract, combination, or conspiracy under § 1 of the Sherman Act because the complaint alleges no facts concerning the licensees' conscious commitment or involvement in any common scheme. In response, Alps observes that it has alleged the license agreements themselves are the contracts in restraint of trade and that, in light of its parallel allegations that OWW used fraudulent means to procure the patents licensed to Fillbauer and Otto Bock, the patents were invalid and unenforceable and the licensing agreements amounted to an agreement between horizontal competitors to limit output.

As a preliminary matter, the Court notes that, "in anti-trust cases, 'where the proof is largely in the hands of the alleged conspirators,' dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 746 (1976) (quoting *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473 (1962)). *See also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("[T]he existence of antitrust injury is not typically resolved through motions to dismiss.") (citing *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 876 (3d Cir. 1995)); *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 355 (D.N.J. 2009) (citing *Schuylkill Energy*, 113 F.3d at 417).

Licensing agreements are generally not subject to antitrust liability. *Rosenthal Collins Group, LLC v. Trading Tech. Int'l*, No. 05 C 4088, 2005 U.S. Dist. LEXIS 37504, *18 (N.D. Ill. Dec. 26, 2005) (citing *Intergraph Corp. v. Intel Corp.*, 195 F.3d 1346, 1358 (Fed.Cir.1999)). It

6

is well settled that the Sherman Act does not restrict the long recognized right of a trader or manufacturer engaged in an entirely private business to exercise freely his own independent discretion as to the parties with whom he will deal. *See, e.g., United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919); *Intergraph Corp.*, 195 F.3d at 1358. Such right gives way, however, when a purpose exists to create or maintain a monopoly. *See id.*; *see also Rosenthal Collins Group, LLC v. Trading Tech. Int'l*, No. 05 C 4088, 2005 U.S. Dist. LEXIS 37504, *18 (N.D. Ill. Dec. 26, 2005).

In this case, Alps has pleaded that OWW's purpose is to create a monopoly and has alleged facts in support thereof. Among those allegations are claims that the licensing agreements into which OWW entered with Fillbauer and Otto Bock comprised one component of OWW's alleged scheme to create a monopoly. Alps has additionally alleged that the patents for which the licenses were issued to Fillbauer and Otto Bock were fraudulently obtained. OWW seeks to tease out the licensing agreements as discrete factors and asks the Court to consider the claims relating to those agreements in isolation from Alps's other allegations and antitrust claims. When determining antitrust liability based on a collection of factual allegations, such as those Alps has made in this action, however, "courts must look to the [alleged] monopolist's conduct taken as a whole rather than considering each aspect in isolation." *LePage's, Inc. v. 3M*, 324 F.3d 141, 162 (citing *Continental Ore Co v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962) (superseded by statute on other grounds) ("In cases such as this, plaintiffs should be given the full benefit of their proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each. . . . The character and effect of a conspiracy are not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole.")); *see also City of Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1376

7

(9th Cir. 1992) ("[I]t would not be proper to focus on specific individual acts of an accused monopolist while refusing to consider their overall combined effect. . . . We are dealing with what has been called the 'synergistic effect' of the mixture of the elements."). "If a plaintiff can allege that a series of actions, when viewed together, were taken in furtherance and as an integral part of a plan to violate the antitrust laws, that series of actions, as an overall scheme, may trigger antitrust liability." *In re Gabapentin Patent Litig.*, 649 F. Supp. 2d 340, 358-59 (D.N.J. 2009).

In this case, taking Alps's allegations as true, as it must on a motion to dismiss, the Court concludes that discovery could yield evidence of fraudulent or anticompetitive conduct by OWW that proves the licensing agreements were made in furtherance of an overall scheme to create a monopoly. Notwithstanding OWW's assertions to the contrary, Alps need not prove that Fillbauer and Otto Bock had a conscious commitment to or intentional involvement in the alleged monopolistic scheme. *See United States v. Paramount Pictures*, 334 U.S. 131, 161 (1948) ("[A]cquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one.") The United States Supreme Court has determined that, "[i]t is not always necessary to find a specific intent to restrain trade or to build a monopoly to find that the anti-trust laws have been violated." *United States v. Griffith*, 334 U.S. 100, 105 (1948). Consistent with the statutory language of § 1 of the Sherman Act, "[i]t is sufficient that a restraint of trade or monopoly results as the consequence of a defendant's conduct or business arrangements." *Id.* Considering Alps's allegations in their entirety, particularly given Alps's claim that OWW fraudulently obtained the patents it licensed to Fillbauer and Otto Bock, the Court concludes that Alps's allegations relating to licensing agreements may form part of the basis for OWW's antitrust liability under § 1 of the Sherman Act. *See USM Corp. v. SPS Techs.,*

*Inc.*, 694 F.2d 505, 514 (7th Cir. 1982) (observing that fraudulent procurement of patent may provide additional reason to find an anticompetitive effect of the licensing agreement); *DiscoVision Assoc. v. Disc Mfg. Inc.*, 42 USPQ2d 1749, 1757 (D. Del. 1997) (allegations of fraudulent procurement of patent may form basis for antitrust liability). Accordingly, this ground for dismissal lacks merit.

### III. Conclusion

For the reasons discussed above, the Court **DENIES** Defendant Ohio Willow Wood Company's Motion to Dismiss (Doc. 19).

**IT IS SO ORDERED.**

3-29-2011
**DATED**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**